IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GARY L. WALKER,              )
                           )
          Plaintiff,      )
                           )
    v.                 )     Case No.: 06-00333-CV-W-REL
                           )
COUNTRY MUTUAL INSURANCE CO.,  )
                           )
        Defendant.    )

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the court is Defendant's motion for partial summary judgment on the grounds that (1) Missouri Revised Statute § 375.296 is inapplicable to Plaintiff's vexatious refusal claims, and (2) the undisputed facts do not establish Defendant's failure to pay Plaintiff's underinsured motorist claim and medical payments claim was unreasonable according to Missouri Revised Statute § 375.420. There are no disputed facts on the issues of whether Missouri Revised Statute § 375.296 is applicable to Plaintiff's vexatious refusal claims. I find as a matter of law that Defendant's refusal to pay Plaintiff's underinsured motorist claim was reasonable. Disputed facts remain as to whether Defendant's refusal to pay Plaintiff's medical payments claim was reasonable. Therefore, Defendant's motion for summary judgment is granted as to (1) Plaintiff's claims in Count II and IV made pursuant to § 375.296 and (2) his claim in Count II made pursuant to § 375.420. Defendant's motion for summary judgment is denied as to Plaintiff's claim in Count IV made pursuant to § 375.420.

## I.    BACKGROUND

On May 14, 2007, Plaintiff filed a four-count third amended complaint seeking damages pursuant to the insurance policy he had with Defendant.  Count I alleges that Defendant breached the insurance policy by refusing payment of Plaintiff's claim for underinsured motorist benefits.  Similarly, Count III alleges Defendant breached the insurance policy by refusing payment of Plaintiff's claim for medical payments benefits. Counts II and IV seek damages for Defendant's alleged vexatious refusal to pay the respective claims.

On June 11, 2007, Defendant filed a motion for partial summary judgment and suggestions in support concerning the two vexatious refusal counts (Doc. No. 132).  Plaintiff filed suggestions in opposition on July 11, 2007 (Doc. No. 163).  On July 27, 2007, Defendant filed reply suggestions to its original motion (Doc. No. 173).

## II.    STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The key to determining whether summary judgment is proper is ascertaining whether a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a

reasonable jury could return a verdict for either party. <u>Am. Acad. of Family Physicians v. United States</u>, 75 A.F.T.R.2d 95-1709 (W.D. Mo. 1995), <u>aff'd</u> 91 F.3d 1155 (8th Cir. 1996). The party moving for summary judgment has the burden of proving that these requirements for summary judgment have been met. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

In a summary judgment analysis, a court must first consider whether there are any issues of fact. If the only issues are issues of law, then summary judgment is appropriate. <u>Disesa v. St. Louis Cmty. Coll.</u>, 79 F.3d 92, 94 (8th Cir. 1996). If issues of fact are raised, a court must consider whether these issues are material to the outcome of the case. Materiality is identified by the substantive law that is to be applied. <u>Anderson</u>, 477 U.S. at 248. Factual disputes that are collateral to the substantive law will not preclude summary judgment. <u>Id</u>.

In addition to the requirement that a dispute of fact be material, the dispute must also be genuine. A dispute of fact is considered genuine if the non-moving party has produced sufficient evidence such that a reasonable jury could return a verdict for that party. <u>Id</u>. at 249. When considering a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. <u>Id</u>. at 255. If the evidence submitted by the non-moving party is merely colorable or is not significantly probative, then summary judgment may be granted. <u>Id</u>. at 249-50.

Where the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving

3

party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). This burden is met when the moving party identifies portions of the record demonstrating an absence of a genuine issue of material fact. <u>Id</u>. at 323. If the moving party meets the requirement, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 248. The trial judge then determines whether a trial is needed -- "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250.

## III. *UNCONTROVERTED FACTS*

Below, typed in bold, are the facts offered by Defendant that I find to be uncontroverted by the record before me.

1. **On or about March 2, 2002, plaintiff was involved in an automobile accident at the location of Tudor Road and Independence Road in Lee's Summit, Missouri.**

Plaintiff does not dispute this fact.

2. **Plaintiff's Third Amended Complaint alleges claims for benefits under a contract of insurance with defendant for underinsured motorist coverage and medical payments coverage.**

Plaintiff does not dispute this fact.

3. **Plaintiff's Third Amended Complaint alleges defendant is "authorized and licensed to do business in the state of Missouri."**

Plaintiff does not dispute this fact.

4

4. **Plaintiff's Third Amended Complaint alleges claims for vexatious refusal to pay underinsured motorist benefits and medical payment benefits pursuant to §§ 375.296 and 375.420, Mo.Rev.Stat.**

Plaintiff does not dispute this fact.

5. The first notice of the above-referenced auto accident occurred by letter dated June 24, 2004, to an agent, Heath Chapman, for Country Mutual Insurance Company.

In support of this fact, Defendant cites page 16, lines 16-23 and page 17, lines 6-13 of Rick Lowe's deposition testimony:

Q: . . . When is it that Country Mutual Insurance Company first became aware of a motor vehicle accident of March 2nd, 2002, in which Mr. Walker was involved?

A: The loss was reported on August 4th, 2004. There is a letter or a fax from the agent to me dated June 30th, 2004, with a letter from William Niffen concerning the claim.

. . .

Q: And prior to that, there was a fax from an agent. What agent?

A: Heath Chapman.

Q: I'm sorry, Keith?

A: Heath, H-e-a-t-h.

Q: In which he forwarded you a letter from William Niffen dated what?

A: June 24, 2004.

5

Plaintiff admits that Mr. Lowe testified as such, but stated his testimony was in error. Plaintiff further states the alleged error in Mr. Lowe's testimony is demonstrated by Plaintiff's statement of additional uncontroverted facts.

Plaintiff's additional facts do, in fact, controvert Defendant's proposed fact. Specifically, Plaintiff's first proposed fact states that Plaintiff's counsel sent an initial claim notice letter dated February 16, 2004, to Defendant. Defendant did not dispute this fact. Because Plaintiff's first proposed fact indicates Defendant received notice of the accident approximately four months earlier than the date contained in the instant proposed fact, I find this fact to remain controverted.

6. **Country Mutual Insurance Company on August 10, 2004, requested additional information from American Family Insurance Company regarding plaintiff's vehicle damage.**

Plaintiff does not dispute this fact.

7. **A facsimile dated August 10, 2004, was received by defendant which facsimile indicated the total repair bill for plaintiff's vehicle was $565.57.**

Plaintiff does not dispute this fact.

8. **Country Mutual Insurance Company on August 10, 2004, requested plaintiff's cooperation in connection with a sworn statement and copies of bills and records regarding plaintiff's injury claim.**

Plaintiff does not dispute this fact.

9. **On April 18, 2005, plaintiff's statement under oath was taken in connection with**

**plaintiff's claims in his petition.**

Plaintiff does not dispute this fact.

10.     **Plaintiff testified that he underwent multi-level back surgery as a result of injuries sustained during May, 1989, during military service in Germany.**

Plaintiff does not dispute this fact.

11.     **Plaintiff testified that he suffered a second injury to his back while at work during 1996 and that he made a workers' compensation claim for the injury.**

Plaintiff does not dispute this fact.

12.     **Plaintiff testified that he injured his back a third time during 1997 as a result of an automobile accident.**

Plaintiff does not dispute this fact.

13.     **Plaintiff testified that he underwent an arthroscopic procedure on his back during 1997 after the car accident.**

Plaintiff does not dispute this fact.

14.     **Plaintiff testified that he underwent a fusion surgery in 1998 to his back just after the automobile accident which occurred in 1997.**

Plaintiff does not dispute this fact.

15.     **Plaintiff testified that part of his claim for bodily injury arising out of the March 2, 2002, automobile accident was constant and severe low back pain which pain was continuing even three (3) years after the auto accident.**

Plaintiff does not dispute this fact.

16.    **Plaintiff's attorney, William E. Niffen, II, received a May 17, 2005, request for medical, insurance and employment record authorizations.**

    Plaintiff does not dispute this fact.

17.    **No response was made to the May 17, 2005, request for authorizations until July 18, 2005.**

    Plaintiff does not dispute this fact.

18.    **Plaintiff's attorney, William E. Niffen, II, received an August 17, 2005, request for execution of a record authorization.**

    Plaintiff does not dispute this fact.

19.    **Plaintiff's [a]ttorney, William E. Niffen, II, received an October 24, 2005, request for record authorizations.**

    Plaintiff does not dispute this fact.

20.    **Defendant, by and through their attorney Paul Hasty, wrote letters dated December 11, 2005, January 5, 2006, January 10, 2006, February 9, 2006, and March 22, 2006, in order to obtain previously requested medical authorizations from plaintiff.**

    Plaintiff does not dispute this fact.

21.    **Plaintiff never did provide the executed authorization requested August 17, 2005.**

    Plaintiff does not dispute this fact.

22.    **Plaintiff never did provide the executed authorizations requested October 24, 2005.**

8

Plaintiff does not dispute this fact.

### IV. ADDITIONAL UNCONTROVERTED FACTS

In response, Plaintiff referred the court to the Statement of Uncontroverted Facts previously filed by the parties in this case (Doc. No. 152). I take judicial notice of these facts as set forth below in bold:

1. **The Plaintiff is and was at all times relevant hereto a resident of the State of Missouri, residing in Lee's Summit, Missouri.**

2. **That at all times relevant hereto, Defendant Country Mutual Insurance Company was and is an Illinois insurance company/corporation authorized and licensed to do business in the state of Missouri.**

3. **That on or about March 2, 2002, the Defendant had issued its Policy No. AA6344530 (hereinafter "Country Mutual's Insurance Policy") to the Plaintiff covering his 1999 Lexus RX-300, which was in full force and effect.**

4. **Under the terms of Country Mutual's Insurance Policy, the Defendant provided uninsured-underinsured motorist coverage to the Plaintiff. Pursuant to said coverage, Defendant promised to pay its insured, Plaintiff, the damages to which he was legally entitled to recover from the owner or operator of an ininsured or underinsured motor vehicle because of bodily injuries sustained by him and caused by an accident.**

5. **The only liability coverage Robert Myers had with regard to the accident was with American Family Insurance which provided twenty-five thousand dollars ($25,000.00) liability coverage.**

9

6.    No one other than Robert Myers negligently caused or contributed to the accident of March 2, 2002.

7.    That American Family Insurance Group offered in settlement of Gary L. Walker's claim and cause of action for personal injuries sustained in the accident against its insured, Robert Myers, and to pay . . . all of American Family's applicable twenty-five thousand dollars ($25,000.00) liability coverage to the Plaintiff.

8.    Pursuant to the terms of Country Mutual's Insurance Policy the Defendant, Country Mutual Insurance Company promised to pay its insured, Gary L. Walker, (up to its policy limit) the damages to which he was legally entitled to recover from the owner or operator of an uninsured or underinsured vehicle because of bodily injuries sustained by him and caused by an accident.

9.    That at all times relevant hereto, Country Mutual's Insurance Policy provided two hundred fifty thousand dollars ($250,000.00) underinsured motorist coverage to the Plaintiff Gary Walker.

10.    That at the time of the accident Robert Myers had in full force and effect a policy of liability insurance with American Family Insurance Group, Policy No. 03-680937-02.  That said policy provided a maximum of twenty-five thousand dollars ($25,000.00) insurance coverage for damages caused to any one individual.

11.    That at the time of the accident Robert Myers had no liability insurance with regard to his operation of a motor vehicle other than the $25,000.00 dollar Policy from American Family Insurance.

10

12.     That American Family Insurance Group offered in settlement of Gary L. Walker's claim and cause of action against its insured, Robert Myers, and to pay the entire applicable twenty-five thousand dollars ($25,000.00).

13.     That plaintiff, Gary L. Walker, informed defendant Country Mutual Insurance Company, of American Family's offer and sought its permission to accept such offer.

14.     That on or about January 4, 2005, defendant, Country Mutual Insurance Company, agreed to waive its subrogation rights against Robert Myers and consented to plaintiff, Gary L. Walker's settlement of his cause of action and claims against said Robert Myers without waiving his right to make a claim under Country Mutual's Insurance Policy for underinsured motorist coverage and/or benefits against the Defendant.

15.     That Missouri law is applicable to the disputes between Plaintiff and Defendant as set forth in this matter.

16.     That the motor vehicle accident of March 2, 2002, was caused by the carelessness and negligence of Robert Myers in the operation of his motor vehicle.

Plaintiff also offered an additional fourteen uncontroverted facts. Below, the facts typed in bold are those that I find to be undisputed based on the admissible evidence before me.

1.     Plaintiff's Counsel sent an initial claim notice letter to Defendant dated February 16, 2004.

Defendant does not dispute this fact.

11

2.     **On or about September 20, 2004, Plaintiff's Counsel forwarded a letter to Defendant written by Dr. Steven Wilkinson. The letter stated that the injuries and treatment were related to the collision of March 2, 2002.**

Defendant does not dispute this fact.

3.     Defendant admitted that it received a copy of the repair estimate for the property damage claim.

Defendant disputes this fact.

In support of this fact, Plaintiff cites page 28, line 17 of Rick Lowe's deposition testimony. The relevant testimony reads:

Q:     What is it that you have in your file that shows the amount paid by American Family?

A:     There's a facsimile from American Family indicating that the estimate for repairs – it says, the vehicle repaired before anyone had a chance to do an estimate and shop did not take photos. As you can see, the repairs were done at Hendrick Collision Repair Center and the amount was $565.57.

To dispute this fact, Defendant states that its corporate representative, Rick Lowe, testified that he had not seen a repair estimate for the property damage claim and became aware of the repair cost from a facsimile from American Family. Defendant also cites page 28, lines 13-24 of Rick Lowe's testimony:

A:     We're aware of an amount that was paid by American Family.

12

Q: You've seen that repair estimate and those bills?

A: No.

Q: What is it that you have in your file that shows the amount paid by American Family?

A: There's a facsimile from American Family indicating that the estimate for repairs – it says, the vehicle repaired before anyone had a chance to do an estimate and shop did not take photos. As you can see, the repairs were done at Hendrick Collision Repair Center and the amount was $565.57.

The cited deposition excerpt supports Defendant's reading. Specifically, Plaintiff's proposed fact states that Defendant received a repair estimate for the property damage claim. Mr. Lowe testified that he had not seen a repair estimate, but rather a facsimile from American Family containing the amount paid. I find this fact to be controverted.

4. **Defendant's corporate representative personally reviewed Plaintiff's medical records on February 18, 2005.**

Defendant disputes this fact.

In support of this fact, Plaintiff cites page 35, line 24 of Rick Lowe's testimony. Mr. Lowe testified:

Q: It looks like I reviewed the medical information on February 18th, 2005.

13

Defendant agrees that Mr. Lowe reviewed a summary of Plaintiff's medical records on February 18, 2005, but states the summary did not include a description of the Plaintiff's complete medical history because Defendant was not provided with a complete set of Plaintiff's medical records. To dispute Plaintiff's proposed fact, Defendant cites page 35, lines 21-25, page 36, lines 15-21, and page 37, lines 9-18, from Mr. Lowe's deposition testimony:

A:    As far as a summary of the injury and/or medical bills?

Q:    Yes.

A:    It looks like I reviewed the medical information on February 18th, 2005.

.   .   .

Q:    Can you tell me what records, other than are in the file, that Country Mutual Insurance Company had requested but not received? And by requested, I mean from anyone.

A:    I think prior medical records.

Q:    Can you be more specific than that?

A:    Prior to the accident.

.   .   .

Q:    Other than asking for records from American Family, what specific records was Country Mutual Insurance Company looking for

14

> regarding Mr. Walker's medical condition prior to the lawsuit being
> filed?
>
> A:      Just a complete set of records prior to the accident.
>
> Q:      According to Country Mutual Insurance Company, what constituted
> a complete set?
>
> A:      Just all the medical treatment that he had regarding that injury prior
> to the accident.

The cited deposition testimony supports Plaintiff's proposed fact that Mr. Lowe reviewed Plaintiff's medical records on February 18, 2005. The proposed fact does not state that the records reviewed on February 18, 2005 were a complete set. As a result, I find this fact to be uncontroverted but note that the summary did not include a complete medical history.

5.      **Defendant wanted a "complete set" of Plaintiff's medical records for treatment prior to the collision.**

Defendant does not specifically controvert this fact, but states that it is incomplete.

In support of this fact, Plaintiff cites page 37 , lines 9-18 of Mr. Lowe's deposition transcript. Mr. Lowe testified:

> Q:      Other than asking for records from American Family, what specific
> records was Country Mutual Insurance Company looking for
> regarding Mr. Walker's medical condition prior to the lawsuit being
> filed?

15

A:     Just a complete set of records prior to the accident.

Q:     According to Country Mutual Insurance Company, what constituted

a complete set?

A:     Just all the medical treatment that he had regarding that injury prior

to the accident.

Defendant does not specifically dispute this fact, but states that it is incomplete.

Defendant cites the following testimony in support of its position that it wanted a complete

set of Plaintiff's medical records regarding Plaintiff's back conditions prior to the accident:

Q:     According to Country Mutual Insurance Company, what constituted

a complete set?

A:     Just all the medical treatment that he had regarding that injury prior

to the accident.

Plaintiff and Defendant both cite the same testimony.  I find this testimony supports

Plaintiff's proposed fact and find it to be uncontroverted.  The cited testimony does not

provide the context necessary to determine if "that injury," as contained on page 37, line 18,

refers to Plaintiff's back condition.

6.     **Plaintiff signed releases for medical records related to back treatment prior to
the collision of March 2, 2002.**

In support of this fact, Plaintiff cites William E. Niffen, II's affidavit:

That I returned authorizations to Defendant which were signed by Mr.

16

Walker.  The releases were for medical treatment related to the injuries sustained on or about March 2, 2002, and for some of the medical treatment received by Mr. Walker prior to March 2, 2002.

Defendant does not specifically controvert this fact, but states that it is incomplete. Defendant states that Plaintiff did sign releases for medical records related to back treatment received prior to the collision of March 2, 2002.  However, the releases, which were provided to Plaintiff by Defendant, were not returned until July 18, 2005, two months after the request of medical records was made to Plaintiff.  Additionally, when the medical record authorization forms were returned to Defendant by Plaintiff, they were modified by Plaintiff thereby restricting the scope of the information authorized to be released.

In support of its position, Defendant cites paragraphs 1-6 of its First Request for Admissions and Plaintiff's respective responses.  Paragraphs 1-6 of Defendant's Requests for admissions are as follows:

1.      Exhibit 1, attached hereto, is a genuine, accurate and complete copy of correspondence, including attachments thereto, William E. Niffen, II, received.

2.      There was no response to Exhibit 1.

3.      Exhibit 2, attached hereto, is a genuine, accurate and complete copy of correspondence William E. Niffen, II, received.

4.      There was no response to Exhibit 2.

17

5. Exhibit 3, attached hereto, is a genuine, accurate and complete copy of the substance of correspondence William E. Niffen, II, received.

6. William E. Niffen, II, did not respond to Exhibits 1, 2, or 3 by providing the requested authorizations executed, without modification of said authorizations.

Plaintiff's responses were as follows:

1. Admitted.

2. Denied. Plaintiff returned the releases via letter on July 18, 2005.

3. Admitted.

4. Denied. Plaintiff returned the releases via letter on July 18, 2005.

5. Admitted.

6. Admitted to the extent that Plaintiff modified the releases. Denied as to the allegation that Plaintiff failed to respond. Plaintiff returned the modified releases via letter on July 18, 2005.

Based on the above-cited evidence, I find Plaintiff's proposed fact to be uncontroverted but note that the releases Plaintiff signed were modified from the forms provided by Defendant.

7. Defendant admits it never advised Plaintiff, nor his attorneys, of the existence of the medical payments coverage.

Defendant disputes this fact, stating that it is inaccurate.

18

In support of this fact, Plaintiff cites page 47, lines 12-25 and page 62, line 2 though page 63, line 18 of Rick Lowe's deposition:

> Q:    (By Mr. Reddoch) Did anyone with your company ever discuss with Mr. Walker and/or his representatives at any time the med pay coverage under his policy as it relates to this motor vehicle accident?

> A:    I don't know.

> Q:    Are there any documents in the claim file that would reflect or help you in any way with regard to that question?

> A:    I don't see anything, no.

> Q:    Is there anything within your company policies and procedures with regard to explaining to insureds their policy rights with regard to coverage after an accident?

> A:    Yes.  We explain coverages to our insureds.

.   .   .

> Q:    In reference back to Exhibit No. 11, which is the policies and procedures of Country Mutual, it is, as I believe you've testified, the policy and procedure of Country Mutual to explain the coverages available to claimants and policyholders; correct?

> A:    To policyholders, yes.

19

Q:   Why is it that Country Mutual Insurance did not communicate to Mr.
     Walker or his representatives that there was coverage for med pay
     coverage to pay for the ambulance bill on the night of the accident?

A:   Well, he was represented, so we didn't communicate that to Mr.
     Walker, and the attorney did not make a demand for any med pay
     coverage.

Q:   Is there something in the policies and procedures on No. 11 that says
     if someone is represented by an attorney, that your company no longer
     explains rights to insureds?

A:   No, I don't think there's anything in there, other than the fact that we
     deal with the attorney instead of the insured when he's represented.

Q:   Was there any explanation to Mr. Walker's attorney that there was
     coverage for the ambulance bill on the night of the accident?

A:   I don't see anything, no.

Q:   Would the fact that that would not be communicated to Mr. Walker
     or his attorney be contrary to the stated policy as set forth in Exhibit
     No. 11?

A:   I would think that the attorney would be aware of the coverage and
     make a request  for payment on that.

Q:   That wasn't my question.  My question was - -

          MR. SULLIVAN:     Read it back.

20

(The reported read the question back.)

A:    I don't know that it mentions anything in there regarding an attorney or what we are to communicate.

Q:    (By Mr. Reddoch) No question that it's the company's policy to communicate to its insureds the coverages available.

A:    Yes.

In support of its position, Defendant states Mr. Lowe testified during his deposition that he did not know of anyone associated with Country Mutual who discussed with Mr. Walker and/or his representatives at any time the "medical payments coverage" under Mr. Walker's policy. Defendant further stated Mr. Lowe testified Mr. Walker's file did not indicate that Mr. Walker's attorney was notified of Mr. Walker's med pay coverage. Defendant cites page 47, lines 12-16, and page 62, line 24 through page 63, line 2 to controvert Plaintiff's proposed fact:

Q:    (By Mr. Reddoch) Did anyone with your company ever discuss with Mr. Walker and/or his representatives at any time the med pay coverage under his policy as it relates to this motor vehicle accident?

A:    I don't know.

.  .  .

Q:    Was there any explanation to Mr. Walker's attorney that there was coverage for the ambulance bill on the night of the accident?

A:    I don't see anything, no.

21

The cited testimony does not support Plaintiff's proposed fact. Instead, as Defendant points out, Mr. Lowe's testimony merely states that he did not know whether Country Mutual ever discussed the med pay coverage with Mr. Walker and/or his representatives – it does not establish that they affirmatively did not. Likewise, Mr. Lowe testified that Mr. Walker's claim file did not contain an explanation to Mr. Walker's attorney of med pay coverage, which falls short of an admission that such an explanation was not given. This fact, therefore, remains controverted.

8.     **Defendant admitted that Plaintiff was transported to the hospital via ambulance as a result of the collision of March 2, 2002.**

Defendant does not dispute this fact.

9.     **Defendant admitted that the ambulance charges for transportation on the night of March 2, 2002, were reasonable amounts.**

Defendant does not dispute this fact.

10.     Defendant admitted that all of the charges for medical treatment on or after March 2, 2002, were reasonable amounts.

Defendant disputes this fact, stating that it is inaccurate.

In support of this fact, Plaintiff cites page 65, lines 11-16 of Rick Lowe's deposition testimony:

Q:     Does Country Mutual have any reason to believe that the fees, as represented by the bills set forth in Exhibit No. 16, were not reasonable for the services they reflect?

22

A:    No.

Defendant disputes this fact, stating that Mr. Lowe testified that the series of medical bills provided to him as Exhibit 16 during his deposition were reasonable for the services they reflected. Defendant further states that Mr. Lowe did not state that all of the charges for medical treatment on or after March 2, 2002, were reasonable amounts. Defendant cites page 60, lines 14-16 and page 65, lines 11-15, in support of its position:

Q:    Exhibit 16 is a series of medical bills for Mr. Walker; correct?

A:    Correct.

.   .   .

Q:    Does Country Mutual have any reason to believe that the fees, as represented by the bills set forth in Exhibit No. 16, were not reasonable for the services they reflect?

A:    No.

The cited testimony supports Defendant's reading, as Mr. Lowe testified only to the reasonableness of the medical bills contained in Exhibit 16 – not to the charges for all medical treatment Plaintiff received on or after March 2, 2002. Nothing in the record for purposes of this motion suggests that Exhibit 16 contains a complete set of Plaintiff's medical bills. As a result, I find this fact to remain controverted.

11.    **Defendant did not obtain a medical examination of Plaintiff regarding his injuries until December 5, 2006.**

Defendant does not dispute this fact.

23

12.     **Plaintiff demanded the policy limit via a letter to Defense Counsel on or about June 26, 2006.**

Defendant does not dispute this fact. I note, however, that the demand was made only for the underinsured motorist policy limit.

13.     **Defense Counsel rejected Plaintiff's demand on or about July 2[4], 2006.**

Defendant does not dispute this fact. Plaintiff's proposed fact states defense counsel rejected the demand on July 25, 2006. However, the letter from defense counsel attached to Exhibit A, William Niffen, II's Affidavit, is dated July 24, 2006.

14.     **Defendant knew it had applicable medical payments coverage for the March 2, 2002, accident.**

Defendant does not dispute this fact.

V.     *APPLICABILITY OF MISSOURI REVISED STATUTE § 375.296*

In Counts II and IV of his third amended complaint, Plaintiff seeks damages for Defendant's alleged vexatious refusal to pay on his claims for underinsured motorist coverage and medical payments coverage. Both counts seek relief pursuant to Missouri Revised Statutes §§ 375.296 and 375.420. As stated by Defendant, both statutes authorize additional damages and attorney's fees for an insurer's vexatious refusal to pay; however, § 375.296 is applicable only to insurance companies not authorized to do business in the state. Rife v. State Farm Mut. Auto. Ins. Co., 833 S.W.2d 42, 44 (Mo. App. 1992)(citing Willis v. Am. Nat'l Life Ins. Co., 287 S.W.2d 98, 102 (Mo. App. 1992)).

24

The undisputed facts of this case are that Defendant is authorized and licensed to do business in the State of Missouri. Section 375.296 thus does not apply. Plaintiff does not contest that his claims of vexatious refusal are governed by § 375.420. As a result, Defendant's motion for summary judgment is granted on Plaintiff's claims in Counts II and IV made pursuant to § 375.296.

## VI. *MISSOURI REVISED STATUTE § 375.420*

Missouri Revised Statute § 375.420 provides that an insured may obtain damages from his or her insurance company for vexatious refusal to pay a claim "if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse." This statute "is penal in nature and must be strictly construed." Watters v. Travel Guard Int'l, 136 S.W.3d 100, 109 (Mo. App. 2004). "[T]he purpose behind allowing for vexatious-refusal penalties is to correct the evil of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of the claim." Id. at 110. The statute was not, however, "intended to prevent a company from resisting payment where the question of law or fact about the claim was doubtful." Hopkins v. Am. Econ. Ins. Co., 896 S.W.2d 933, 941 (Mo. App. 1995).

To receive damages pursuant to § 375.420, an insured must prove the insurer's refusal to pay was "willful and without reasonable cause, as the facts would appear to a reasonable and prudent person." DeWitt v. Am. Fam. Mut. Ins. Co., 667 S.W.2d 700, 710 (Mo. banc 1984). "[T]he issue of reasonable cause for delay is determined on a case-by-case basis on the individual facts available to the insurer at the time it was called upon to

25

pay." Wunsch v. Sun Life Assurance Co., 92 S.W.3d 146, 153 (Mo. App. 2002). An insurer

will not be held liable for these statutory damages when it "has reasonable cause to believe

and does believe there is no liability under its policy and has a meritorious defense."

Watters, 136 S.W.3d at 109; see also Groves v. State Farm Mut. Auto. Ins. Co., 540 S.W.2d

39, 42 (Mo. banc 1976). However, the existence of a litigible issue does not preclude penalty

if the insurer's attitude is vexatious and recalcitrant. DeWitt, 667 S.W.2d at 710.

Although the question of reasonableness is generally a question of fact to be decided

by a jury, such question can be determined by the court as a matter of law based upon

undisputed facts. Watters, 136 S.W.3d at 109. Missouri courts have granted summary

judgment on the issue of reasonableness on vexatious refusal claims. See, e.g., Watters, 136

S.W.3d 100; Wunsch, 92 S.W.3d 146; Wood, 980 S.W.2d 43; Hocker Oil Co., Inc. v.

Barker-Phillips-Jackson, Inc., 997 S.W.2d 510 (Mo. App. 1999).

In this case, Plaintiff seeks vexatious refusal damages for Defendant's failure to pay

both his underinsured motorist claim and his medical payments claim. Because unreasonable

delay is alleged, the following chronology gleaned from the undisputed facts is helpful:

| | |
|---|---|
| March 2, 2002 | Accident |
| February 16, 2004 | Plaintiff sent Defendant initial claim notice |
| August 10, 2004 | - Defendant requested additional information from American Family Insurance Company regarding Plaintiff's vehicle damage<br>- Defendant received a facsimile indicating the total repair bill for Plaintiff's vehicle was $565.57<br>- Defendant requested Plaintiff's cooperation in connection with a sworn statement and copies of bills and records regarding Plaintiff's injury claim |

26

| September 20, 2004 | Plaintiff's counsel forwarded a letter to Defendant written by Dr. Steven Wilkinson; the letter stated that the injuries and treatment were related to the March 2, 2002 accident |
| --- | --- |
| February 18, 2005 | Defendant's corporate representative personally reviewed Plaintiff's medical records; the summary did not contain medical records from before the accident |
| April 18, 2005 | Plaintiff's statement under oath was taken<br>- Plaintiff testified he underwent multi-level back surgery as a result of injuries sustained during military service in Germany in May of 1989<br>- Plaintiff testified he suffered a second injury to his back while working in 1996 and that he made a workers' compensation claim for the injury<br>- Plaintiff testified that he injured his back a third time in 1997 as the result of an automobile accident<br>- Plaintiff testified he underwent an arthroscopic procedure on his back during 1997 after the car accident<br>- Plaintiff testified he underwent a fusion surgery in 1998 to his back just after the automobile accident which occurred in 1997<br>- Plaintiff testified that part of his claim for bodily injury arising out of the March 2, 2002, automobile accident was constant and severe low back pain which pain was continuing even three years after the automobile accident |
| May 17, 2005 | Defendant sent Plaintiff's counsel a request for medical, insurance and employment record authorizations |
| July 18, 2005 | Plaintiff responded to the to the May 17, 2005, request for authorizations by providing modified authorizations |
| August 17, 2005 | Plaintiff's counsel received a request for execution of a record authorization; an executed authorization was not returned to Defendant |
| October 24, 2005 | Plaintiff's counsel received a request for record authorizations for different providers; executed authorizations were not returned to Defendant |

| December 11, 2005 | Defendant's counsel wrote letters in order to obtain previously requested medical authorizations from Plaintiff |
|---|---|
| January 5, 2006 | Defense counsel wrote letters in order to obtain previously requested medical authorizations from Plaintiff |
| January 10, 2006 | Defense counsel wrote letters in order to obtain previously requested medical authorizations from plaintiff |
| February 9, 2006 | Defense counsel wrote letters in order to obtain previously requested medical authorizations from plaintiff |
| March 22, 2006 | Defense counsel wrote letters in order to obtain previously requested medical authorizations from plaintiff |
| June 26, 2006 | Plaintiff demanded the policy limit via a letter to defense counsel for the underinsured motorist policy limit |
| July 24, 2006 | Defense counsel rejected Plaintiff's demand for the underinsured motorist policy limit |
| December 5, 2006 | Defendant obtained a medical examination of Plaintiff regarding his injuries |
| April 27, 2007 | Defendant's corporate representative Rick Lowe testified: <br> - ambulance charges for transportation on the night of March 2, 2002, were reasonable amounts <br> - Defendant knew it had applicable medical payments coverage for the March 2, 2002, accident |
| May 14, 2007 | Plaintiff filed a Third Amended Complaint containing a claim for medical payment benefits |

As discussed above, the point at which Defendant's refusal to pay is evaluated for reasonableness is at the time it was called upon to pay. Plaintiff's claim for underinsured motorist benefits and medical payments benefits were made at different times. Each will, therefore, be analyzed separately.

## A.    Underinsured Motorist Benefits

Plaintiff demanded the underinsured motorist policy limit on June 26, 2006.  At this time, Defendant was aware that Plaintiff had pre-existing injuries to his back and Plaintiff had not returned signed authorizations that would enable Defendant to determine how much, if any, of Plaintiff's back pain could be attributed to the previous injuries.  Specifically, Defendant learned of Plaintiff's accident on February 16, 2004.  On August 10, 2004, Defendant learned the total repair bill for Plaintiff's vehicle was $565.57.  During Plaintiff's April 18, 2005, sworn statement, he testified to three previous back injuries and two previous surgical procedures on his back.

On May 17, 2005, Defendant sent Plaintiff authorizations that would enable it to obtain medical, insurance and employment records.  Plaintiff returned modified authorizations to Defendant on July 18, 2005.  On August 17, 2005, defense counsel requested Plaintiff execute an insurance authorization; this authorization was never returned. On October 24, 2005, defense counsel sent Plaintiff a second set authorizations that would enable Defendant to obtain medical and billing records from different providers.  Defense counsel sent follow-up letters concerning the status of these authorizations on December 11, 2005, January 5, 2006, January 10, 2006, February 9, 2006, and March 22, 2006.  Plaintiff never provided authorization for Defendant to obtain these records.

Plaintiff's significant preexisting injuries coupled with the limited damage to Plaintiff's vehicle created a question of fact about the cause of Plaintiff's injuries.  Without signed authorizations, Defendant was not able to fully investigate whether Plaintiff's injuries

29

were caused by the March 2, 2002, accident. This evidence indicates that, at the time Plaintiff demanded payment for underinsured motorist benefits, a legitimate question of coverage existed. Nothing in the record suggests that Defendant's actions were vexatious or recalcitrant; rather, the undisputed facts show that Defendant made numerous requests to obtain the authorizations. Defendant's motion for summary judgment with regard to Count II is granted.

## B.     Medical Payments Benefits

Defendant argues that since Plaintiff first raised the issue of medical payment benefits in his third amended complaint, Defendant "was never called upon to pay medical payment benefits and therefore cannot be liable for the vexatious refusal of such a claim because a claim was never made." The record on summary judgment does not support this argument. The undisputed facts merely demonstrate that Plaintiff alleged a claim for benefits under a contract of insurance with Defendant for medical payments coverage in the third amended petition; they do not affirmatively show that Plaintiff never demanded payment before that time. Defendant thus has not shown an absence of proof supporting Plaintiff's case as the summary judgment standard requires. Even if May 14, 2007, the date Plaintiff filed his third amended complaint, were used as the date of Plaintiff's claim, the undisputed facts do not show if or when such claim was denied. Without these facts, I cannot even determine whether there was a delay – a necessary prerequisite to determining whether the alleged delay was reasonable. Defendant's motion for summary judgment is denied on this ground.

## VII.    CONCLUSION

Based on the above findings of undisputed facts and the law discussed in Sections V and VI, I find that genuine issues of material facts do not exist on Plaintiff's claims for vexatious refusal of underinsured motorist benefits and medical payments benefits pursuant to § 375.296 or his claim for vexatious refusal of underinsured motorist benefits pursuant to § 375.420, and that Defendant is entitled to summary judgment as a matter of law.  I also find that genuine issues of material fact remain on  Plaintiff's claim for vexatious refusal of medical payment benefits and that Defendant is not entitled to summary judgment. Therefore, it is

ORDERED that Defendant's Motion for Partial Summary Judgment is granted in part and denied in part.  Counts I and III remain in their entirety.  Count IV remains as to Plaintiff's claim under § 375.420.


                                             /s/ Robert E. Larsen
_____ROBERT E. LARSEN
                                             United States Magistrate Judge

Kansas City, Missouri
July 31, 2007

31